UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LINDA W. MERCADO, et al.,

    Plaintiffs,

v.                                              CASE NO. 3:12-cv-122-J-12JBT

HFC COLLECTION CENTER, INC.,
et al.,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiffs' (Doc. 73) and Defendants' (Doc. 70) cross-motions for summary judgment.[2]  The Court referred to the undersigned Defendants' motion on November 29, 2012 (Doc. 72) and Plaintiffs' motion on December 14, 2012 (Doc. 76).

For the reasons set forth herein, the undersigned **RECOMMENDS** that the Court **GRANT** Defendants' motion for summary judgment (Doc. 70) and **DENY** Plaintiffs' motion for partial summary judgment (Doc. 73).

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

[2] Plaintiffs' motion is for partial summary judgment solely on the issue of liability. (Doc. 73.)  Defendants filed a response to this motion. (Doc. 75.)  In this response, Defendants request oral argument. (*Id.* at 7.) However, the undersigned recommends that oral argument is not necessary.

**I.    Background**

  **A.    Procedural History**

On February 3, 2012, Plaintiffs Linda Mercado ("Mercado") and Joshua Rodriggs ("Rodriggs") filed the instant action, alleging that Defendants HFC Collection Center, Inc. ("HFC") and Rolfe & Lobello, P.A. ("Rolf & Lobello") violated both the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55-559.785 ("FCCPA").  Specifically, Plaintiffs allege that Defendants filed time-barred lawsuits against Plaintiffs in Duval County Court in violation of these laws. (Doc. 1.)  On September 4, 2012, Plaintiffs filed a motion to certify the instant case as a class action and to be named as class representatives. (Doc. 22.)[3]

On October 16, 2012, Defendants filed a motion for judgment on the pleadings, presenting the same arguments Defendants make in their summary judgment motion.  (Doc. 48.)  The Court adopted the undersigned's Report and Recommendation (Doc. 74) and denied Defendant's motion for judgment on the pleadings.  (Doc. 80.)  In this Report and Recommendation, the undersigned observed that–

> Defendants cannot clearly establish by the pleadings alone that there is no set of facts which, taken as true, would entitle Plaintiffs to relief.  There is no reason to convert the Motion for Judgment [on the Pleadings] to a

---

[3] This motion is still pending before the undersigned for a report and recommendation. (Doc. 59.)

>   summary judgment motion under Rule 12(d) because the
>   parties have already filed summary judgment motions.

(Doc. 74 at 9.)

The undersigned now addresses the issues initially presented in Defendants' motion for judgment on the pleadings, properly raised in the parties' cross-motions for summary judgment. As the issue is now before the Court on summary judgment, the undersigned enlists the aid of exhibits and other information beyond the scope of the pleadings.

### B. Undisputed Facts

Plaintiffs Mercado and Rodriggs each held a credit card issued through Chase Bank, USA, N.A. ("Chase Bank"). (Doc. 1 at 2-3; Doc. 7 at 1.) Plaintiffs' accounts are governed by a Cardmember Agreement. (Doc. 33-2 at 5-7; Doc. 33-3 at 1.) The agreement reads in pertinent part:

>   **DEFAULT/COLLECTION**
>
>   Your Account may be in a default if any of the following applies:
>
>   - we do not receive at least the Minimum Payment by the date and time due as shown on your billing statement.
>
>   - you exceed your credit line.
>
>   - you fail to comply with the terms of this Agreement or any other agreement with us or one of our related companies.
>
>   - we obtain information that causes us to believe that

> you may be unwilling or unable to pay your debts to us or to others on time.
>
> • you file for bankruptcy.
>
> • you become incapacitated or die.
>
> If your Account is in default, we may close your Account without notice and require you to pay your unpaid balance immediately. To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorney's fees, court costs, and all other expenses of enforcing our rights under this Agreement.

(Doc. 33-2 at 7.)

As discussed further herein, Plaintiffs' accounts became delinquent for failure to make timely minimum payments. (Doc. 1 at 3; Doc. 7 at 1.) Eventually, Chase Bank closed and charged off each account. HFC purchased Plaintiffs' debts and filed suit to collect them. (Doc. 31-1 at 4.) HFC hired Rolfe & Lobello to file suit on its behalf. HFC filed suit in the County Court, Fourth Judicial District, in and for Duval County, Florida, against Mercado on June 10, 2011 (Doc. 23-1 at 5-6) and against Rodriggs on August 22, 2011 (Doc. 71-1 at 2).[4]

The dispositive issue is whether these two county court actions were time-barred. The parties agree that Delaware law applies and provides a three-year

---

[4] Defendants have moved the Court to take judicial notice of these filing dates and have supplied the county court dockets relevant to each lawsuit. (Doc. 71.) Plaintiffs have not objected and do not dispute these dates. A court may take judicial notice of documents filed in another court "to establish the fact of such litigation and related filings." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). The undersigned therefore takes judicial notice of these dates.

statute of limitations "from the accruing of the cause of such action."[5]  10 Del. C. § 8106(a).  The crucial question is when each such underlying cause of action accrued.  Plaintiffs contend that HFC's causes of action accrued on the dates that each Plaintiff missed a payment.  (Doc. 73.)  Plaintiffs observe that HFC, in internal documents, denominates this date as the "First Date of Delinquency."  (Doc. 73 at 4-5.)  Defendants, however, argue that the statute of limitations did not start to run until Chase Bank "charged off" each debt, declaring each Plaintiff's entire balance due immediately.  (Doc. 70 at 8.)

The parties do not dispute when each of these events occurred.  A spreadsheet Defendants produced during discovery shows that May 5, 2008, was Mercado's "First Date of Delinquency," and that Chase Bank charged off her account on November 30, 2008.  (Doc. 79-1 at 7.)  The same spreadsheet shows Rodriggs's "First Date of Delinquency" as May 10, 2008, and that Chase Bank charged off his debt also on November 30, 2008.  (*Id.* at 11.)  Plaintiffs do not dispute the

---

[5] Plaintiffs' Cardmember Agreements provide that Delaware law applies:

> The terms and enforcement of this Agreement and your Account shall be governed and interpreted in accordance with federal law and, to the extent state law applies, the law of Delaware, without regard to conflict-of-law principles.  The law of Delaware, where we and your account are located, will apply no matter where you live or use the account.

(Doc. 33-3 at 1 (capitalization omitted).)  See also *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340-41 (11th Cir. 2005) (observing that, under Florida law, courts will enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy); *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000) (same).

authenticity of this spreadsheet or the accuracy of the dates it contains. (*See* Doc. 73.) Instead, they argue that the spreadsheets are "[c]ritical to the Court's review of the facts in this case" and urge the Court to hold that the statute of limitations began to run on the identified First Dates of Delinquency. (Doc. 73 at 2.)

## II.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

The Court has recently observed that on summary judgment–

> [t]he Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The purpose of summary judgment is to dispose of unsupported claims or defenses which, as a matter of law, do not raise issues of material fact suitable for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether the movant is entitled to summary judgment, the Court must view all the evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party, and must resolve all reasonable doubts in favor of the non-movant. *See, e.g.*, *Rioux v. City of Atlanta, Georgia*, 520 F.3d 1269, 1274 (11th Cir. 2008).

*Everbank v. Fifth Third Bank*, No. 3:10-cv-1175, 2012 WL 3277110, *1 (M.D. Fla. Aug. 9, 2012) (Melton, J.).

## III.   Analysis

Plaintiffs' Complaint (Doc. 1) alleges that Defendants violated the FDCPA and

the FCCPA by filing lawsuits against Plaintiffs outside of the applicable statute of limitations, which both parties agree can be found at Section 8106(a) of Title 10 of the Delaware Code. The applicable statute of limitations reads–

> No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by instrument under seal, no action based on a detailed statement of the mutual demands in the nature of a debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of action . . . .

10 Del. C. § 8106(a).

Plaintiffs' and Defendants' cross-motions therefore turn on when HFC's causes of action against each Plaintiff accrued within the meaning of this statute. Plaintiffs contend that HFC's causes of action accrued on the first date each Plaintiff failed to make his or her respective minimum payments. Plaintiffs observe that HFC's spreadsheets refer to this date as the "First Date of Delinquency." Defendants contend, however, that HFC's causes of action did not accrue until Chase Bank "charged off" each account, declaring each Plaintiff's entire balance due immediately.

If Plaintiffs are correct, HFC's cause of action against Mercado accrued on May 5, 2008, and the statute of limitations barred the state court suit filed on June

10, 2011. Similarly, HFC's cause of action against Rodriggs would have accrued on May 10, 2008, and the statute of limitations would have barred HFC from filing suit on August 22, 2011. If Defendants are correct, however, neither cause of action accrued until November 30, 2008, the date Chase Bank "charged off" Plaintiffs' accounts. Therefore, the state court suits would not have been time-barred.

Thus, the dispositive issue is one of Delaware law. "In determining the law of [a] state, federal courts must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982).

The parties' memoranda and the undersigned's own research reveal no Delaware decision directly on point. The case that appears to come closest is the Delaware Supreme Court's decision in *Worrel v. Farmers Bank*, 430 A.2d 469 (Del. 1981). Defendants also point the Court towards a recent opinion by District Judge Gregory A. Presnell of the Orlando Division of the Middle District of Florida, *Carter v. Athena Funding Group Assets LLC*, No. 6:12-cv-706, 2012 WL 3947344 (M.D. Fla. Sept. 10, 2012), which addresses the precise issue presented in the instant case. Judge Presnell's opinion also observes that "the most analogous case

appears to be *Worrel*."[6] *Carter*, 2012 WL 3947344, at *1.

In *Worrel*, the Delaware Supreme Court considered the statute of limitations set forth at 6 Del. C. § 2-725, which applies to breach of contract for the sale of goods. 430 A.2d at 470. Although 10 Del. C. § 8106(a), and not 6 Del. C. § 2-725, applies to the instant case, the two statutes contain similar language.[7] In *Worrel*, the defendant financed an automobile purchase by borrowing money from plaintiff bank. The *Worrel* defendant eventually stopped making payments on the installment loan. The bank repossessed the automobile, sold it, and applied the proceeds in partial satisfaction of the defendant's debt. Years later, the bank sued the defendant to recover the deficiency. The *Worrel* defendant sought to defend against the bank's collection action by arguing that 6 Del. C. § 2-725 barred plaintiff's suit as untimely. As in the instant case, the dispositive issue in *Worrel* was when the cause of action accrued. 430 A.2d at 470.

Similar to the argument made by Plaintiffs in this case, the *Worrel* defendant

---

[6] *Worrel* is not precisely on point at least because it involved a different statute of limitations, and an installment contract rather than a credit card agreement.

[7] Section 2-725 of Title 6 of the Delaware Code reads–

> (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. . . .

argued that the cause of action accrued upon his first missed payment. The *Worrel* plaintiff argued that its cause of action did not accrue until after it sold the automobile and ascertained the amount of the deficiency. The Delaware Supreme Court rejected both these positions and held–

> Under the instrument before us, we conclude that the four-year limitation of § 2-727 began to run on Bank's claim for a deficiency judgment upon the occurrence of two events: (1) Worrel's breach of the agreement; *and (2) Bank's action either declaring the loan balance to be immediately due and payable or conduct evidencing such a declaration, such as repossession of the secured automobile.*

*Id.* at 474 (emphasis added). The *Worrel* court held that the bank's repossession of the defendant's automobile constituted its first action evidencing its intent to declare the entire debt immediately due. (*Id.*) As the bank brought its suit within four years from the date it repossessed the automobile, the *Worrel* court held that § 2-725 did not bar the suit.[8]

Judge Presnell applied the Delaware Supreme Court's reasoning in *Worrel* to a case substantially identical to the one presently before the Court. *See Carter v. Athena Funding Group Assets LLC*, No. 6:12-cv-606, 2012 WL 3947344 (M.D. Fla. Sep. 10, 2012). *Carter* also concerned a plaintiff suing a debt collector defendant under the FDCPA for allegedly bringing a time-barred collection action. The cardmember agreement at issue in *Carter* also provided that Delaware law governed

---

[8] A similar lower court Delaware decision is *Walpole v. Walls,* No. 01-10-0148, 2003 WL 22931330 (Del. Ct. Com. Pleas July 8, 2003).

disputes over the contract. Similar to the cardmember agreement in the instant case, the *Carter* cardmember agreement did not provide that the cardmember's entire balance would automatically come due immediately upon a single missed payment.

> Judge Presnell observed–
>
>> The Cardmember Agreement provides that the cardholder will be considered to be in default if he or she fails to make a minimum payment, and further provides that "[i]f we consider your account to be in default, we may close your account without notice and require you to pay your unpaid balance immediately." . . . . Accordingly, per *Worrel*, after Carter missed his payment, the statute of limitations would not have begun to run until he first received an indication that the lender was closing his account and requiring him to pay his unpaid balance immediately.

*Id.*, at *1. Judge Presnell held that the *Carter* plaintiff did not allege that he had received this indication, and therefore dismissed the complaint without prejudice for failure to state a claim. *Id.*

The undersigned concurs with Judge Presnell's reasoning. Similar to the agreement at issue in *Carter*, the agreement in the instant case merely allowed Chase Bank at its option to close the account and require full payment of the unpaid balance. However, the agreement did not require such action or provide for it automatically. Chase Bank did not close each account and require full payment until November 30, 2008.

Plaintiffs attempt to distinguish *Carter* from this case, arguing–

> The decision in *Carter* . . . is inapplicable, as there was no evidence in that case as to whether the debt collector had itself determined the account was in default–here, *Plaintiffs rely on the uncontroverted facts as initially determined by Defendants*–their calculation of the "First Date of Delinquency["] and the "Last Payment Date."

(Doc. 73 at 4-5.) This observation, though true, is not a basis for distinguishing *Carter*. In short, as the cardmember agreements state, and as the spreadsheets show, default or delinquency and requiring full payment are two separate and distinct events. Thus, the fact that Chase Bank recognized that Plaintiffs' accounts were delinquent, as shown by the spreadsheets, is not the operative fact that begins the running of the statute of limitations. The operative fact is when Chase Bank took the information that Plaintiffs were in default, and thus their accounts were delinquent, and manifested an intent to require payment of the full balances. There is no evidence that this occurred any earlier than the "Charge Off Dates" shown on the spreadsheets. Thus, *Carter* is directly on point.[9]

Plaintiffs argue that the recommended interpretation of Delaware law allows a creditor to artificially prolong the running of the statute of limitations merely by not declaring the full balance due. However, Plaintiffs cite only non-Delaware law to

---

[9] As in *Carter*, there is no indication in this case from the record regarding when either Plaintiff became aware that their accounts had been closed and full payment was demanded. However, Defendants do not argue that the statute of limitations began to run any later than the "charge off" date of November 30, 2008. Thus, the Court need not decide whether the Delaware statute of limitations may have run from an even later date when the Plaintiffs received notice of the charge-off. *Carter* appears to adopt this later date.

12

support this argument.[10] It is not this Court's function to question the wisdom of Delaware law. Moreover, a creditor would appear to have no reason to unduly delay collection efforts on a credit card account. In this case, the time elapsed between the "First Date of Delinquency" and the "Charge Off Date" was only approximately six months in each case. It is not unreasonable, and it would appear to be in the best interests of both debtor and creditor, for the creditor to wait some period of time to allow the debtor to bring the account current if he or she can do so. Thus, even considering the competing policy arguments about when accrual should occur, there is no clear policy that would make Judge Presnell's and the undersigned's reading of Delaware law unreasonable.

Thus, the undersigned recommends that Delaware's Supreme Court would interpret 10 Del. C. § 8106(a) to mean that the causes of action against each Plaintiff accrued only upon the first instance that Chase Bank manifested an intent to declare the entire balance on each account immediately due and payable. This did not occur until Chase Bank closed and charged off both Plaintiffs' accounts on November 30, 2008. Section 8106(a), therefore, did not bar HFC's state court

---

[10] Plaintiffs cite *Arvelo v. Park Finance of Brossard, Inc.*, 15 So. 3d 660 (Fla. Dist. Ct. App. 2009), a Florida case interpreting Florida law; *Zaks v. Elliot*, 106 F.2d 425 (4th Cir. 1939), a Fourth Circuit case interpreting South Carolina law; and *Knighten v. Palisades Collections, LLC*, 721 F.Supp.2d 1261 (S.D. Fla. 2010), a Southern District of Florida case applying Florida law. (*See* Doc. 73 at 3-4.) The undersigned further observes that the contract at issue in *Arvelo* provided "that non-payment of any amount due would constitute a default, causing the full remaining amount of indebtedness to become 'immediately due and payable.'" 15 So. 2d at 662.

collections suits until after November 30, 2011.  HFC sued Mercado on June 10, 2011 and Rodriggs on August 22, 2011.  Thus, neither of these suits were time-barred.  Plaintiffs' claims under the FDCPA and FCCPA, therefore, fail.

Accordingly, the undersigned respectfully **RECOMMENDS** that**:**

1. Defendants' Motion for Summary Judgment (**Doc. 70**) be **GRANTED**.

2. Plaintiffs' Cross-Motion for Partial Summary Judgment as to Liability (**Doc. 73**) be **DENIED**.

3. The Clerk be directed to enter final judgment in favor of Defendants, terminate all pending motions, and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on January 28, 2013.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Howell W. Melton
Senior United States District Judge

Counsel of Record

14